UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| PAUL T. GOODWIN, | ) |  |
|---|---|---|
|  | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 4:06CV848 HEA |
|  | ) |  |
| DON ROPER, | ) |  |
|  | ) |  |
| Respondent. | ) |  |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Petitioner's Motion for Relief from Judgment Pursuant to Fed.R.Civ.P. 60(b), or in the Alternative, Supplemental Petition for Writ of Habeas Corpus, [Doc. No. 49]. Respondent has filed a memorandum in opposition. For the reasons set forth below, the Motion is denied.

Petitioner contends that because of the Supreme Court decision in *Martinez v. Ryan*, ___ U.S. ___, 132 S.Ct. 1309, he can now raise his ineffective assistance of counsel claim that his trial counsel was ineffective for failing to object to the prosecutor's improper penalty phase closing argument.[1]

Petitioner's substantive argument is that trial counsel was ineffective for

---

[1] Prior to *Martinez*, a petitioner must have raised each of his claims in the state court or his claims would be procedurally barred.

failing to object to the improper closing argument of the prosecutor. Initially, the Court must determine whether the prosecutor's remarks were inappropriate. There are two requirements for a due process claim based on prosecutorial misconduct. First, the defendant must show proof of misconduct, *State v. Piper*, 663 N.W.2d 894, 913, and second, he must show that the misconduct resulted in prejudice to such an extent that he was deprived of a fair trial. *Id.*; *United States v. Bryant,* 349 F.3d 1093, 1096 (8th Cir.2003) (citing *United States v. Beeks*, 224 F.3d 741, 745 (8th Cir.2000)).

As the Eighth Circuit Court of Appeals explained in *Barnett v. Roper*, 541 F.3d 804, 812-13 (8th Cir.2008), a prosecutor's improper remarks can violate the Fourteenth Amendment if the remarks so "infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). The Court continued that habeas corpus relief should only be granted if the statements are so "inflammatory and so outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial." *Id.* (citations omitted). A court may only grant relief upon a showing of a reasonable probability that the outcome would have been different but for the improper statement." *Shurn v. Delo*, 177 F.3d 662, 667 (8th Cir.1999); *Stringer v. Hedgepeth*, 280 F.3d 826, 829 (8th Cir.2002).

A finding of prosecutorial misconduct hinges more on the misconduct's effect on the proceedings than what is actually said. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Not every improper statement calls for a new trial or a reversal of the judgment of conviction. *United States v. Kenyon*, 481 F.3d 1054, 1066 (8th Cir.2007) (quoting *United States v. Pierce*, 792 F.2d 740, 742 (8th Cir.1986)). The comments must be so prejudicial that it "infect[s] the trial with unfairness as to make the resulting conviction a denial of due process." *Id.*

The record before this Court establishes that the evidence against Petitioner was indeed overwhelmingly strong , and there was no question that Petitioner was responsible for the death of the victim. The Missouri Supreme Court summarized the facts:

> In the summer of 1996, Goodwin moved into a boardinghouse near Hanley Road in St. Louis County. The boardinghouse was next door to Mrs. Joan Crotts's home. Within a week or so of his arrival at the boardinghouse, Goodwin began confronting Mrs. Crotts. Goodwin continued to insult and curse her throughout the summer. In August, Goodwin was having a barbecue in the backyard of the boardinghouse and began throwing beer cans over the fence into Mrs. Crotts's yard. When Mrs. Crotts came out to complain, Goodwin picked up a sledgehammer and smashed a rock with it saying: "This is your head . . . if you keep messing with me."
>
> A short time later, Mrs. Crotts left her home to attend a social function. Goodwin confronted her in the driveway and yelled: "Get your fat ass back in the house, bitch. I've got one coming for you." Mrs. Crotts's (adult) daughter intervened and ended the confrontation, but Goodwin was evicted from the boardinghouse. As

he left the boardinghouse, he said to Mrs. Crotts: "I am going to get you for this, bitch."

A year and a half later (March 1, 1998), Mrs. Crotts called the police at 5:00 a.m. to report that someone had tampered with her vehicle. An officer arrived, and Mrs. Crotts reported that she had found some papers taken from her car and thrown on the ground. She also reported that her dogs had been let out of her backyard and that a step on the back porch was out of place. The officer found no suspicious persons in the neighborhood.

Goodwin had already entered Mrs. Crotts's house that morning and hid in the basement until after the police left. ([Goodwin] . . . opened the backyard gate, entered Mrs. Crotts's house through an unlocked back door, sat on a chair in the basement and smoked a cigarette. Several hours passed. Eventually, [Goodwin], carrying a hammer, climbed the basement stairs and confronted Mrs. Crotts in her kitchen. (43 S.W.3d at 810-11.) He grabbed her arm and forced her into the living room where he forced Mrs. Crotts to perform oral sex on him. He then took her back to the kitchen. While drinking a two-liter bottle of Pepsi, he wrote on a piece of paper "you are next," and forced her to walk to the head of the basement stairs. With both hands, he shoved her down the stairs. As she lay face down and unmoving at the bottom of the stairs, Goodwin watched her for a while. Then he hit the back of her head several times with the sledgehammer and left the house.

Mrs. Crotts's daughter found her, still alive, that afternoon, and Mrs. Crotts related these events to a police officer at the hospital. Mrs. Crotts died that evening (following emergency surgery). An autopsy revealed that Goodwin inflicted injuries all over her body. In addition to the skull fractures, which caused her death, she had bruises and injuries on her face, chest, shoulders, back, buttocks, knees, thighs, and both arms and hands. She had eight broken ribs and a broken hip. Many of the wounds were defensive wounds. Many of the injuries were not consistent with a fall down the stairs, but instead of a beating.

> The police found the note and Pepsi bottle. Goodwin's fingerprints were on both. They also found bootprints in the spilled Pepsi. Two cigarette butts and a wrapper, the brand Goodwin smoked, were found in the basement. Just outside the door, police found Goodwin's hearing aid. After obtaining a warrant to search Goodwin's home, the police found blood stains on a pair of his jeans, underpants, and boots. The boots matched the bootprints left in the spilled Pepsi.
>
> The police picked Goodwin up at work that day. After being offered a sign-language interpreter and being advised of his Miranda rights, Goodwin admitted to killing Mrs. Crotts and provided the details above. (In his oral statement to the police, [Goodwin] admit(ed) to being at Mrs. Crotts's home. [Goodwin] said that he had spent the evening drinking heavily at a bar . . . . Between 11:00 p.m. and midnight, he got a ride with a co-worker who dropped him off at a . . . gas station. [Goodwin] began walking and eventually arrived at Mrs. Crotts's backyard, opening the gate and entering the basement as detailed above. Following the completion of his statement, [Goodwin] accompanied police to the victim's house and re-enacted the events of the morning of March 1. 43 S.W.3d at 811.
>
> At trial, the defense relied primarily on the theory that [Goodwin] suffered from a mental disease or defect preventing him from acting with deliberation or being responsible for his conduct. Id.

The overwhelming evidence of Petitioner's guilt satisfies any further inquiry necessary to evaluate the degree of prejudice. Most importantly, there is no doubt but that Petitioner actually committed the murder. *Newlon v. Armontrout,* 885 F.2d 1328 (8th Cir. 1989). The Court need not proceed, therefore to assess trial counsel's failure to object because the alleged prosecutorial misconduct did not violate Petitioner's due process rights, and therefore, Petitioner can show no prejudice resulting from the lack of objection.

- 5 -

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Motion for Relief from Judgment or in the Alternative Supplemental Petition for Writ of Habeas Corpus, [Doc. No. 49], is denied.

Dated this 10th day of February, 2014.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE