UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PAUL T. GOODWIN, | ) |
| | ) |
| Petitioner, | ) **CAPITAL CASE** |
| | ) |
| v. | ) No. 4:06CV848 HEA |
| | ) |
| TROY STEELE, | ) |
| | ) |
| Respondent, | ) |

## OPINION, MEMORANDUM AND ORDER

Paul Goodwin is scheduled to be executed by the State of Missouri on December 10, 2014. Mr. Goodwin has filed a "supplemental" petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and moves to stay his execution. He argues that he suffers from an intellectual disability and that the imposition of the death penalty violates the Eighth Amendment. Having carefully and painstakingly reviewed the matter, the Court finds that relief must be denied because the supplemental petition is indeed successive and Mr. Goodwin has not obtained authorization from the Court of Appeals to seek such relief in this Court.

Mr. Goodwin was convicted of first-degree murder and sentenced to death for killing Mrs. Joan Crotts, a widow in her sixties. In his state court motion for postconviction relief, Goodwin argued that the death penalty violated the Eighth Amendment because he is intellectually disabled. The state court examined the claim under Atkins v. Virginia, 536 U.S. 304 (2002), and found that it was refuted by the trial record. See Goodwin v. Missouri, 191 S.W.3d 20, 27-31 (Mo. banc 2006).

The state court reviewed the trial testimony of his two experts and the state's expert. Mr. Goodwin retained Dr. Rosalyn Schultz, a forensic psychologist to testify on his behalf.

> Dr. Schultz conducted a forensic evaluation of [Goodwin] prior to trial which included eleven and a half hours of interaction with [Goodwin], personality

> testing, competency to stand trial assessments, intelligence tests, achievement tests, malingering tests, psychological testing, and a personal history. In describing [Goodwin's] intellectual abilities on direct examination, Dr. Schultz stated: "He also has intellectual impairments, a lower level of IQ, **not in the retarded range but in the borderline range**, and so he – didn't achieve very well. He wasn't getting along with his peers." In addition, Dr. Schultz reviewed and offered testimony concerning [Goodwin's] records from the Special School District beginning in 1973 through graduation from the Wirtz Skill Center. In explaining the records, Dr. Schultz stated in direct examination: "Consistently on the IQ tests, his verbal IQ, his full scale IQ, was in the borderline range, **meaning not as low as mentally retarded** but not up in the normal range, and there's an indication of learning disability that shows up on the testing."

Resp't Ex. C at 12 (Mot. Ct.'s Findings of Facts, Conclusions of Law, and J.) (citations omitted; emphasis in original). Dr. Schultz also discussed his "hearing impairment, his employment history, his relationship with his family, his relationship with his fiancé, his writings in his fiancé's journal, [and] his daily life living alone in his home . . ." Id.

Dr. John Rabun, a psychiatrist, testified that Goodwin's IQ results were in the borderline range of intelligence and did not show "mental retardation." Id. at 14. Dr. Rabun also found "no deficits in [Goodwin's] adaptive level of functioning . . ." Id.

Finally, Dr. Richard Wetzel, a professor at Washington University School of Medicine, also testified that Goodwin was in the borderline range of intelligence. Id. at 15.

In his habeas proceedings before this Court, Mr. Goodwin argued that the state court's finding that he did not suffer from an intellectual disability was unreasonable. The Court denied the claim on the merits.

In his supplemental petition, he argues that the state court's determination of his intellectual disability claim is contrary to the Supreme Court's decision in Hall v. Florida, 134 S. Ct. 1986 (2014), in which the Court held that Florida's rule, foreclosing additional evidence of a capital defendant's intellectual disability if his IQ score was more than seventy, created unacceptable risk that persons with intellectual disability would be executed in violation of the

Eighth Amendment. Mr. Goodwin contends that his supplemental petition is not a second or successive petition under 28 U.S.C. § 2244(b) because he had no fair opportunity to raise such a claim until Hall was decided on May 27, 2014.

Goodwin is incorrect. Title 28 U.S.C. § 2244(b)(1) prohibits the litigation of claims that were presented in prior petitions. Despite his daring convoluted arguments to the contrary, the supplemental petition merely restates his previous claim that he should not have been sentenced to death because he is intellectually disabled. Additionally, the Supreme Court did not make the rule in Hall retroactive to cases on collateral review. See In re Henry, 757 F.3d 1151, 1159 (11th Cir. 2014). But even if it had made it retroactive, and even if Mr. Goodwin could present his claim in a supplemental petition such as this one, his/ argument would still fail because the state postconviction court allowed additional evidence of his intellectual functioning, including evidence of his adaptive behavior, despite his IQ scores being above seventy.

For these reasons, this Court finds that the supplemental petition is successive and must be dismissed. Moreover, this Court does not believe that Goodwin has demonstrated that jurists of reason would find it debatable whether the supplemental petition is second or successive. The process for Mr. Goodwin has been rich, full, and complete  Thus, this Court will not issue a certificate of appealability. 28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that Goodwin's supplemental petition for writ of habeas corpus [ECF No. 91] and motion to stay execution [ECF No. 92] are **DENIED**.

Dated this 5th day of December, 2014.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE