# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| PAUL T. GOODWIN, | ) | |
| | ) | |
| Petitioner, | ) | **CAPITAL CASE** |
| | ) | |
| v. | ) | No. 4:06CV848 HEA |
| | ) | |
| TROY STEELE, | ) | |
| | ) | |
| Respondent, | ) | |

## OPINION, MEMORANDUM AND ORDER

With less than twenty-four hours remaining before he is scheduled to be executed by the State of Missouri, Paul Goodwin petitions the Court to stay his execution on the ground that he is incompetent under Ford v. Wainwright, 477 U.S. 399 (1986), and therefore, his execution would violate the Eighth Amendment's ban on cruel and unusual punishment. After careful review of the petition and Goodwin's experts' opinions, the Court finds that Goodwin has failed to make a threshold showing of incompetence. The petition is denied.

In Ford, the Court held that the "Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane." Id. at 409-10. While the majority did not provide a definition of competence to be executed, Justice Powell wrote in a concurring opinion that "the Eighth Amendment forbids the execution only of those who are unaware of the punishment they are about to suffer and why they are to suffer it." Id. at 422.

In Panetti v. Quarterman, 551 U.S. 930 (2007), the Court agreed with Powell's definition, noting that "[a] prisoner's awareness of the State's rationale for an execution is not the same as a rational understanding of it." Id. at 959. The Court found that an inmate who meets Powell's test is incompetent if "his awareness of the crime and punishment has little or no relation to the understanding of those concepts shared by the community as a whole." Id. The Court concluded:

> The underpinnings of petitioner's claims should be explained and evaluated in further detail on remand. The conclusions of physicians, psychiatrists, and other experts in the field will bear upon the proper analysis. Expert evidence may clarify the extent to which severe delusions may render a subject's perception of reality so distorted that he should be deemed incompetent. Cf. Brief for American Psychological Association et al. as Amici Curiae 17-19 (discussing the ways in which mental health experts can inform competency determinations).

Id. at 962.

The APA's Amicus Brief to which the Court referred states that the forensic psychiatrist or psychologist should "reveal the subject's mental capacities" through interview questions, such as "'Will you be executed?' and 'What preparations have you made in anticipation of your execution?'" Brief for American Psychological Association et al. as Amici Curiae, 2006 U.S. Briefs 6407 at 18.

Goodwin argues that he is incompetent under Ford and Panetti because he suffers from an intellectual disability. Respondent argues that Goodwin has failed to demonstrate that he is incompetent. Respondent further argues that the petition is successive under 28 U.S.C. § 2244(b)(2).

As stated in this Court's Opinion, Memorandum and Order dated December 5, 2014, Goodwin failed to demonstrate to the State of Missouri that he was intellectually disabled (or "mentally retarded"), and he failed to demonstrate to this Court that his sentence violates the Constitution of the United States. Therefore, his incompetence claim is barred by the AEDPA's restrictions of second or successive petitions. Goodwin's Ford claim is simply a restatement of his incompetence claim under Atkins v. Virginia, 536 U.S. 304 (2002). As a result, the instant petition is successive and must be denied as such.

To the extent that Goodwin is attempting to bring a new claim under Ford, he fails to make a threshold showing of incompetence. In support of his incompetence claim, Goodwin cites to the report of Dr. Robert Hanlon, Ph.D., a board certified clinical neuropsychologist. In the report, under the heading "Assessment of Competency to be Executed," Dr. Hanlon states:

> Mr. Goodwin stated that he was sentenced to death following his conviction for the murder of Joan Crotts. He defined his death sentence as follows: "I will be killed." He reported that he is scheduled to be executed on December 10, 2014 at Bonne Terre Correctional Center. He stated that the method of his execution is as follows: "They strap you to a table and hook IVs up to you. The drugs make you go to sleep." When asked to describe the outcome of his scheduled execution, he responded as follows: "Death; I will not be alive."
>
> Despite his intellectual developmental disorder, language disorder, learning disorder, and neurocognitive impairment, *Paul Goodwin has the mental capacity to understand the nature and purpose of the punishment about to be imposed upon him*.

Pet'r Ex. 3 (emphasis added).

Dr. Hanlon's findings show that Goodwin does not suffer from "severe delusions [that] may render [his] perception of reality so distorted that he should be deemed incompetent." Panetti, 551 U.S. 962. Goodwin understands that he will be executed as a result of murdering Mrs. Crotts. There is no evidence that he suffers from delusional thinking. As a result, Goodwin has not made a threshold showing that he is entitled to relief under Ford.

For these reasons, this Court finds that Goodwin is not entitled to habeas relief. Moreover, this Court does not believe that Goodwin has demonstrated that jurists of reason would find it debatable whether relief is warranted. Thus, this Court will not issue a certificate of appealability. 28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that Goodwin's supplemental petition for writ of habeas corpus [ECF No. 101] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability.

Dated this 9th day of December, 2014.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE